27 P.3d 809

**The STATE of Arizona, Appellee,**

v.

**Samuel Phillip VIRAMONTES, Appellant.**

**No. 2 CA–CR 00–0227.**

Court of Appeals of Arizona, Division 2, Department B.

June 19, 2001.

Janet Napolitano, Arizona Attorney General, by Randall M. Howe and Cynthia A. Ryan, Tucson, for appellee.

Isabel G. Garcia, Pima County Legal Defender, by Robb P. Holmes and Lois Yankowski, Tucson, for appellant.

## OPINION

HOWARD, Presiding Judge.

¶ 1 After a jury trial, appellant Samuel Viramontes was convicted of first-degree murder and sentenced to a prison term of natural life. On appeal, he claims the trial court erred by failing to apply the special sentencing procedures in A.R.S. § 13–703 to determine whether to impose natural life or a life sentence with the possibility of release in twenty-five years, and by considering natural life the presumptive sentence for first-degree murder.[1] Finding no reversible error, we affirm. But because the trial court stated in its sentencing minute entry that natural life was the "presumptive" sentence for first-degree murder, we remand for further proceedings regarding the sentence.

■ ¶ 2 We view the evidence in the light most favorable to sustaining the conviction. *State v. Garza,* 196 Ariz. 210, ¶ 2, 994 P.2d 1025, ¶ 2 (App.1999). The victim attended a party at the Viramontes home. After the party, Viramontes, his brother, and two other individuals, Melissa and Richard, gave the victim a ride in Viramontes's mother's truck.

---

1. In a separate memorandum decision, we reject Viramontes's other claims of error. The issues resolved in that decision do not merit publication. Ariz.R.Crim.P. 31.26, 17 A.R.S.

They went to a desert area where Viramontes and his brother got out of the truck with the victim and beat him to death. Viramontes and his brother then returned to the truck and the group drove off.

¶ 3 The jury found Viramontes guilty of first degree murder. The state had not given notice that it intended to seek the death penalty and did not request the court impose a death sentence. *See* Ariz.R.Crim.P. 15.1(g)(1), 16A A.R.S. The court sentenced Viramontes to natural life in prison.

■ ¶ 4 Viramontes argues the trial court failed to employ the special sentencing procedures in § 13–703, improperly used the aggravating and mitigating factors in A.R.S. § 13–702, and did not require the state to prove the aggravating factors beyond a reasonable doubt. Viramontes did not raise these issues below and thereby waived all but fundamental error. *State v. Gatlin,* 171 Ariz. 418, 420, 831 P.2d 417, 419 (App.1992).

■ ¶ 5 The trial court is not required to state its reasons for choosing between a sentence of natural life and life with the possibility of release after twenty-five years, at least when the court has conducted a full hearing pursuant to § 13–703 and has detailed its findings with respect to its decision to sentence the defendant to life imprisonment rather than death. *State v. Guytan,* 192 Ariz. 514, ¶ 42, 968 P.2d 587, ¶ 42 (App. 1998); *State v. Sproule,* 188 Ariz. 439, 440, 937 P.2d 361, 362 (App.1996). And the court may rely on the aggravating and mitigating factors set forth in § 13–702 in sentencing a defendant to natural life in prison, so long as they are not "double counted." *Guytan,* 192 Ariz. 514, ¶¶ 41–42, 968 P.2d 587, ¶¶ 41–42 (approving application of § 13–702 and § 13–703 factors). But no Arizona case has directly addressed the claim that the court is required to follow the procedures set forth in § 13–703, particularly when the death penalty is not an option.

¶ 6 Before 1973, a defendant convicted of first-degree murder could only be sentenced to death or life in prison without early release of any kind. *See* former A.R.S. § 13–453; 1973 Ariz.Sess.Laws, ch. 138, § 2. The choice was "at the discretion of" the judge or jury. Former § 13–453; *see also State v. Lopez,* 163 Ariz. 108, 115, 786 P.2d 959, 966 (1990) (before 1973 amendments, judge or jury had full discretion). In 1972, the United States Supreme Court declared similar statutes unconstitutional in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). A plurality of the Supreme Court found the laws lacked standards, left "uncontrolled discretion" to the decision maker, and was subject to arbitrary enforcement. *Id.* at 253, 92 S.Ct. at 2734, 33 L.Ed.2d at 357 (Douglas, J., concurring). It demanded that the death penalty laws be "evenhanded, nonselective, and nonarbitrary, and to require judges to see to it that general laws are not applied sparsely, selectively, and spottily to unpopular groups." *Id.* at 256, 92 S.Ct. at 2735, 33 L.Ed.2d at 359. In apparent response, the legislature added the special sentencing procedure contained in § 13–703(A). 1973 Ariz.Sess.Laws, ch. 138, § 5; *see also Lopez; State v. Jensen,* 193 Ariz. 105, ¶ 19, 970 P.2d 937, ¶ 19 (App.1998) (1973 amendments to satisfy *Furman* requirements). That statute requires a trial court's decision whether to impose the death penalty to be made "in accordance with the procedures provided in subsections B through G of this section." § 13–703(A). The same amendments also changed the life sentence from natural life to life with the possibility of release after twenty-five years.

¶ 7 In 1993, the legislature added a natural life term as a third sentencing option. 1993 Ariz.Sess.Laws, ch. 153, § 1. Section 13–703(A) now provides:

A person guilty of first degree murder as defined in [A.R.S.] § 13–1105 shall suffer death or imprisonment in the custody of the state department of corrections for life as determined and in accordance with the procedures provided in subsections B through G of this section. If the court imposes a life sentence, the court may order that the defendant not be released on any basis for the remainder of the defendant's natural life. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release. If the court does not sentence the defendant to natural

life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age and thirty-five years if the victim was under fifteen years of age.

¶ 8 The legislature retained the phrase requiring compliance with the procedures in subsections B through G in the first sentence of subsection A, which provides for the decision between death and life imprisonment. It did not add a similar requirement in the rest of the paragraph, which relates to the trial court's decision whether to impose a natural life term or life with the possibility of release after a minimum term. And in subsection E, the legislature removed the language which described a life sentence with a twenty-five year minimum, restricting the requirement that provides that the court shall take into account the factors in subsections F and G to "determining whether to impose a sentence of death or life imprisonment." 1993 Ariz.Sess.Laws, ch. 153, § 1. Thus, the historical background and language of § 13–703 indicate that its special sentencing provisions apply only to the decision between death and life imprisonment. *See State v. Soto–Fong*, 187 Ariz. 186, 202, 928 P.2d 610, 626 (1996) ("The specified statutory aggravators in Arizona's death penalty scheme are designed to narrow, in a constitutional manner, the class of first degree murderers who are death-eligible.").

¶ 9 The severity of the natural life sentence does not require a different result, as Viramontes suggests. In many criminal cases, the sentencing judge, by ordering terms of imprisonment to be served consecutively, imposes what is, in effect, a natural life sentence. But no special sentencing procedures are required and, if the judge imposes presumptive sentences, the judge is not required to state any reasons. *See* § 13–702; *State v. Risco*, 147 Ariz. 607, 609–10, 712 P.2d 454, 456–57 (App.1985) (no reasons need be stated for presumptive sentence). *See also* A.R.S. § 13–708 (sentence is consecutive unless court states otherwise).

¶ 10 In support of his argument that the court was required to use the special procedures and aggravating factors in § 13–703,

Viramontes also cites § 13–702(F), which states: "Nothing in this section shall affect any provision of law that imposes the death penalty, that expressly provides for imprisonment for life or that authorizes or restricts the granting of probation or suspending the execution of sentence."

¶ 11 Section 13–702 is the general sentencing statute; it does not provide for any of the special sentencing options noted in its subsection F. The legislature apparently wanted to assure that other specific sentencing provisions would not be substantively repealed or limited by § 13–702. At the time § 13–702(F) was added in 1982, the provision in § 13–703 for a natural life prison term did not exist. 1982 Ariz.Sess.Laws, 6th spec. sess., ch. 3, § 3. And, subsection F does not refer to the choice between natural life and life without release for twenty-five years. Subsection F, therefore, expresses no legislative intent that would prohibit trial courts from using the aggravating and mitigating factors in § 13–702 in deciding whether to impose a prison term of natural life or life with the possibility of release after twenty-five years.

¶ 12 The special sentencing procedures of § 13–703 do not apply because the death penalty was not requested. Because the sentencing procedures of § 13–703 do not apply, we conclude that the court did not err in using the aggravating and mitigating circumstances listed in § 13–702. Although broader in scope than the factors listed in § 13–703, the factors under § 13–702 have been selected by the legislature to determine the appropriate punishment for a particular defendant. Viramontes has not identified any reasons that preclude the trial court from using them to guide its discretion in choosing between a sentence of natural life or life without possibility of release for twenty-five years. *See Guytan*, 192 Ariz. 514, ¶ 42, 968 P.2d 587, ¶ 42 (no error in using § 13–702 factors). We also reject Viramontes's claim that the trial court was required to find the existence of the aggravating factors beyond a reasonable doubt.

That standard is reserved for the death penalty aggravating factors. *See State v. Brewer,* 170 Ariz. 486, 500, 826 P.2d 783, 797 (1992); *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980). The trial court did not commit fundamental error.

¶ 13 Viramontes also argues the trial court erred by considering natural life in prison the "presumptive" sentence under § 13–703. As he correctly points out, in its sentencing minute entry the court stated that the sentence it had imposed was the "presumptive" term.

¶ 14 The term "presumptive" arises from the sentencing scheme in A.R.S. §§ 13–701 through 13–702.02 and is the sentence that should apply in most cases. *See State v. Thurlow,* 148 Ariz. 16, 19–20, 712 P.2d 929, 932–33 (1986) (presumptive term applies to the "vast majority of first offenders"). It is also the starting point from which the length of the prison term may vary, based on aggravating and mitigating circumstances. *See* §§ 13–702.01 and 13–702.02(B).

■ ¶ 15 There are only three sentencing alternatives for first-degree murder: death, natural life, or life without the possibility of release for twenty-five or thirty-five years. The legislature, however, has not specified that one sentence is appropriate for the vast majority of first offenders or otherwise designated any of the alternatives as the presumptive term. Thus, sentencing for first-degree murder has none of the attributes of the general sentencing scheme of §§ 13–701 through 13–702.02, and the concept of presumptive sentences from those sections simply does not apply to § 13–703. *See State v. Ovind,* 186 Ariz. 475, 478, 924 P.2d 479, 482 (App.1996).

¶ 16 In sentencing Viramontes, the trial court found Viramontes had committed the murder for fun and that he is a danger to society. This could justify a natural life prison term without regard to any consideration of whether that term is the presumptive term for first-degree murder. But the trial court's minute entry shows that the "presumptive" sentence was given. The court's oral pronouncement of sentence did not mention the term "presumptive" but it did not negate the possibility that the court believed that the natural life term was to be imposed in the "vast majority" of such cases in the absence of an imbalance between mitigating and aggravating factors. If this were true, the court may have exercised its sentencing discretion improperly. Only the trial court can clarify its intent and correct the record if need be.

¶ 17 We affirm Viramontes's conviction and sentence. But we remand to the trial court for a period of fourteen days so that it may clarify the ambiguity created by the use of the term "presumptive" in the sentencing minute entry and, if appropriate, make any necessary corrections, or, if necessary, order that it will resentence Viramontes without considering the natural life sentence the presumptive. *State v. Bowles,* 173 Ariz. 214, 216, 841 P.2d 209, 211 (App.1992) (remand appropriate to clarify sentencing discrepancy).[2]

ESPINOSA, C.J., and DRUKE, J., concurring.

2. The clerk of the superior court shall forward any minute entry clarifying the sentencing min-

ute entry or setting this matter for resentencing

to our court under supplemental certificate of record.