NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CARLOS LETONA, *Plaintiff/Appellant,*

*v.*

ARIZONA DEPARTMENT OF CORRECTIONS, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 18-0590
FILED 6-20-2019

Appeal from the Superior Court in Maricopa County
No. LC2017-000455-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Bihn & McDaniel, PLC, Phoenix
By Martin A. Bihn, Donna M. McDaniel
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael K. Goodwin, Kirstin A. Story
*Counsel for Defendants/Appellees Department of Corrections and Timothy Rhyne*

Jackson Lewis P.C., Phoenix
By Jeffrey W. Toppel, Monica M. Ryden
*Counsel for Defendants/Appellees Arizona State Personnel Board and its
Members*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Diane M. Johnsen joined.

---

**W I N T H R O P**, Judge:

**¶1**        Carlos Letona ("Appellant") challenges the superior court's ruling affirming an administrative award of back pay made by the State Personnel Board ("Board") and adopted by the Arizona Department of Corrections ("ADC").  Appellant does not appeal the merits of the award, but instead argues the administrative process lacked statutory authority. For the following reasons, we affirm the superior court's ruling.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Appellant works as a corrections officer for ADC.  On December 4, 2015, Appellant was fired for unnecessarily using "OC spray," a chemical agent, on an inmate diagnosed with mental health issues.  Under Arizona Revised Statutes ("A.R.S.") section 41-783(A) (2019),[1] a "covered" state employee is entitled to pre-termination notice and a chance to respond to the allegations.  At the time of the termination, Appellant was on probation for a different incident, which ADC believed resulted in Appellant losing his status as a covered employee; accordingly, ADC did not provide a pre-termination notice.  On December 8, 2015, Appellant appealed the termination to the Board, arguing he was a covered employee and ADC had violated his procedural due process rights by not giving him pre-termination notice.  The Board agreed with ADC and determined Appellant did not have the right to appeal the termination because the statute did not entitle him to notice.  Appellant appealed the Board's decision to the superior court.  The superior court reversed, finding that Appellant was a covered employee and entitled to pre-termination notice.

**¶3**        On remand, the Board scheduled an appeal hearing for December 2016.  Appellant then filed a motion with the hearing officer requesting a summary ruling.  He argued the superior court's previous ruling established ADC violated his procedural due process rights and he

---

[1]     We cite to the current version of the statute(s) when no revisions material to this decision have occurred.

was therefore entitled to an award of back pay. Before responding to the motion, ADC reinstated Appellant to his pre-termination position and sent a formal notice of discipline for the OC spray incident, giving Appellant a chance to respond to the allegations. ADC then responded to the motion, arguing Appellant had been reinstated but was not yet entitled to an award of back pay because ADC had not determined the level of discipline it would ultimately impose for the incident.

¶4            In his reply, Appellant argued the superior court's ruling and ADC's reinstatement constituted a reversal of his initial termination and an award of back pay was therefore mandatory under A.R.S. § 38-1106(J). He further argued that any subsequent discipline or termination due to the incident would be a separate issue from the December 2015 termination. The hearing officer agreed and determined that Appellant was entitled to back pay under § 38-1106(J). Nonetheless, the officer denied Appellant's motion because she determined an evidentiary hearing was necessary to decide the amount of the award.[2] ADC then provided written notice that it would impose an eighty-hour suspension in lieu of the termination.

¶5            After the evidentiary hearing, the hearing officer issued a recommendation for the Board to grant the appeal, reverse the termination, and award Appellant a uniform allowance and back pay—reduced by earnings Appellant received from another job after he was fired. In April 2017, the Board adopted the hearing officer's recommendation to grant the appeal and issue the uniform allowance and back pay—but not the recommendation to reverse the termination. Because there was a discrepancy in Appellant's employment file, the Board stated that before it would reverse the termination, ADC must submit proof that the termination had been officially rescinded and documented in the employment file. An evidentiary hearing was set so that ADC could submit the required proof. Before the hearing, in March 2017, ADC accepted the Board's ruling and paid Appellant $39,506.53 ($21,080.06 after taxes).

¶6            Although the only outstanding issue at the time the Board adopted the hearing officer's recommendation was the mandate that ADC

_____

[2]    The hearing officer initially determined the appeal was moot because Appellant had been reinstated. However, after the evidentiary hearing, the hearing officer stated "[b]ecause Appellant did not withdraw his appeal, and ADC did not rescind the dismissal, the appeal is a 'live' appeal and is not moot based solely on the ADC's reinstatement. The Board is required to make the appropriate findings and orders to dispose of the appeal as required by applicable law."

provide proof that the termination was rescinded, the Board stated that either party, at their discretion, could request a hearing on whether just cause existed for the termination. Appellant requested such a hearing. The Board granted the request, and the issue was set to be heard along with submission of the proof of the termination's rescission.

**¶7** At the hearing, ADC's counsel conceded that ADC never sent an official letter stating the termination was rescinded, but the fact that ADC reinstated Appellant to his pre-termination position and restored all his benefits to their pre-termination status effectively created a "constructive rescission." Additionally, on April 6, 2017, ADC's human resources unit issued a memo confirming that it had removed all documents related to the termination and reinstatement from Appellant's employment file. Appellant contested the accuracy of the memo.

**¶8** Ultimately, the hearing officer found that no just cause existed for the termination and that ADC never officially rescinded Appellant's termination. The hearing officer recommended the Board find that ADC had "equitably rescinded" the termination by restoring Appellant to the status quo; that the restoration constituted grounds for Appellant to be awarded back pay; and that the sufficiency of that award should be determined by the Department of Administration. Additionally, the hearing officer found that the rescission divested the Board of jurisdiction to consider the "dismissal appeal"[3] and that the eighty-hour suspension

---

[3] Appellant focuses on the Board's adoption of this jurisdictional conclusion as the basis for most of his argument. However, just because an agency says it does or does not have jurisdiction does not automatically make it so. *See State v. Bryant*, 219 Ariz. 514, 516, ¶ 4 (App. 2008) ("Subject matter jurisdiction is a question of law, which we review de novo."). When an administrative agency has jurisdiction over the parties and the subject matter, "[a]n erroneous interpretation and application of a statutory provision, [in the determination of jurisdiction] will normally constitute mere legal error and not operate to deprive an administrative agency of jurisdiction." *State ex rel. Dandoy v. City of Phoenix*, 133 Ariz. 334, 338 (App. 1982), *abrogated on other grounds by Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 243 Ariz. 404 (2018). Therefore, assuming without deciding the Board made a mistake in adopting the hearing officer's recommendation regarding jurisdiction, the legal error is not a basis for reversal. Because we determine Appellant is estopped from bringing this appeal, we need not address the jurisdictional issue in the decision.

imposed after Appellant was reinstated was a separate disciplinary issue subject to a different appeal or grievance process.

¶9 Appellant filed an objection to the hearing officer's report and recommendation, and—for the first time—argued that he had not prevailed on appeal and the only way he could be awarded back pay is for the Board to find on the record that his termination was "reversed" and not "rescinded."

¶10 On October 25, 2017, the Board adopted the hearing officer's recommendation, except the recommendation that the Department of Administration determine Appellant's back-pay award. Specifically, the Board stated:

> The appellant's reinstatement to the Correction Officer II constitutes a rescission of his December 2015 dismissal. All records should reflect that he was reinstated and as a result, *we reverse any reference to any dismissal as there was no dismissal and no finding of just cause. In order to clarify our previous order, any references to "dismissal" are to be removed from his file. The action of reinstatement and return voided his termination and thus we reverse any department action of dismissal.*

(emphasis added).

¶11 ADC adopted the Board's decision and sent notice to Appellant in November 2017. Appellant appealed to the superior court, and the superior court upheld the decision. In its August 2018 minute entry, the superior court concluded (1) the Board did not err when it made a factual finding that ADC "equitably rescinded" the dismissal by reinstating Appellant; (2) the Board had jurisdiction to determine Appellant's back pay under § 38-1106(J) once the termination was rescinded; and (3) the Board did not act contrary to law when it determined what benefits were owed to Appellant.

¶12 In this appeal, Appellant challenges the first two determinations made by the superior court, and we have jurisdiction pursuant to A.R.S. §§ 12-913 and 41-783(G).

**ANALYSIS**

¶13 Appellant contends the superior court erred by affirming the Board's April and October 2017 decisions. He asserts (1) the Board had no authority to make an equitable finding that his termination was rescinded;

(2) the Board had no jurisdiction to hear the appeal and make findings regarding the termination after it was rescinded; (3) the Board could not have determined an amount of back pay without officially reversing the termination on appeal; and (4) ADC and the superior court erred in affirming the Board's decisions.

¶14        In response, ADC argues "the record contains ample support that the Department rescinded [Appellant's] dismissal at his behest" and "in light of the fact that [Appellant] obtained the primary relief that he sought, his contention that he did not prevail is unsupported by fact or law."

¶15        Likewise, the Board argues Appellant "prevailed in his appeal to the Personnel Board, even if the Personnel Board did not explicitly say so in its April 12, 2017 Order, as [Appellant's] termination was effectively reversed by [ADC] when he was reinstated." In addition, the Board asserts that Appellant fails to "demonstrate[] that the Personnel Board's actions were contrary to the language and spirit of its statutory authority."

### I.        Appellant is Judicially Estopped from Bringing This Appeal

¶16        Appellant maintains "[t]he positions taken by the superior court, ADC, and the Personnel Board are untenable and should be rejected by this Court." Appellant's arguments are nonsensical, without any factual foundation and, as explained below, legally impermissible.

¶17        In his briefing to this court, Appellant is asserting a legal position contrary to the position he argued before the hearing officer when he originally sought and received his back-pay award.

¶18        Under the doctrine of judicial estoppel, "a party who has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent proceeding involving the same parties and questions." *State v. Towery*, 186 Ariz. 168, 182 (1996); *see also Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."). Judicial estoppel protects the integrity of the judicial system by "preventing a litigant from using the courts to gain an unfair advantage." *Towery*, 186 Ariz. at 182; *cf. Smith v. CIGNA HealthPlan of Ariz.*, 203 Ariz. 173, 179, ¶¶ 19-21 (App. 2002) (explaining principles of estoppel can apply to decisions of administrative agencies acting in a quasi-judicial capacity). For judicial estoppel to apply, three requirements must be met

"(1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Maricopa County*, 196 Ariz. 173, 175, ¶ 7 (App. 1999).

**¶19**        A party is considered to have been successful in a prior judicial proceeding when "(a) the court in that proceeding granted the party relief or accepted the party's earlier inconsistent position either as a preliminary matter or as part of a final disposition, and (b) the party's inconsistent position was a significant factor in the relief granted." *Id.* at 176, ¶ 8.

**¶20**        We conclude all three factors are present in this case. ADC and Appellant originally appeared before the Board, which was acting in a quasi-judicial capacity, and all three parties appeared in the superior court proceedings. In addition, the underlying issue is the same: whether the Board had authority to award Appellant back pay pursuant to § 38-1106(J) once ADC reinstated Appellant to his former position.

**¶21**        As to the third factor, the record shows Appellant filed a motion for summary ruling with the Board in 2016 as part of his original appeal, arguing that ADC's procedures for his termination were defective and he was therefore entitled to reinstatement and back pay. In the reply in support of the motion, Appellant asserted multiple times that the termination had been "reversed" by ADC—referring to ADC's reinstatement of him to his position—and that he therefore had prevailed in the appeal under § 38-1106(J). The hearing officer agreed with Appellant's assertion that he was entitled to back pay pursuant to § 38-1106(J) and set a hearing to determine if the award should be reduced by any statutory amount.[4] Relying on Appellant's position that he prevailed on appeal and obtained a reversal of his termination, the hearing officer then recommended an award of $39,506.53. The Board adopted that recommendation, and Appellant ultimately was paid that amount (less applicable taxes) in March 2017.

**¶22**        When the Board issued its April 2017 decision adopting the hearing officer's recommendation to award back pay, the only outstanding

---

[4]        Section 38-1106(J)(4) allows the Personnel Board to reduce an award of back pay "[b]y any amount earned by the law enforcement officer in alternative employment." The record here establishes, and Appellant does not challenge, that he earned approximately six thousand dollars at another job after he was dismissed by ADC.

issue was for ADC to provide proof that it had rescinded the termination. The Board stated that a hearing on just cause would be held only if requested by one of the parties. It was Appellant who requested the just cause hearing, which started an apparent snowball of confusion in the procedural posture of this case.

¶23        It was not until the resulting just-cause hearing in September 2017 that Appellant changed his position and began arguing his termination was never reversed as required by the statutes, that ADC had no authority to reinstate him, and the Board lacked jurisdiction to award him back pay. Without question, Appellant received the relief he initially sought—reinstatement of his position and an award of back pay. This result was all consistent with the argument he had previously advanced— that he had prevailed on appeal pursuant to § 38-1106(J). But for Appellant's request for an additional hearing, the matter would have been entirely resolved.

¶24        Nonetheless, Appellant baldly asserts that "his personnel file now reflects that [he] was dismissed, reinstated, and suspended." He argues that anyone reviewing his record today will not know that ADC wrongfully terminated him and that he prevailed in appealing the termination. There is simply no factual basis for this assertion. The record on appeal contains the ADC human resources unit memo documenting that it had removed from Appellant's employment file all references to his termination and reinstatement. And, in October 2017, the Board, in response to Appellant's argument that the ADC memo was not accurate, also specifically ordered any remaining mention of Appellant's dismissal to be stricken from his employment file. There is nothing in the record that indicates ADC has not complied with that order. Most telling, at oral argument, Appellant's counsel conceded that the employment file has not been reviewed by Appellant or his counsel since May of 2017—clearly before the Board's October 2017 order was issued.[5]

¶25        Appellant had the obligation to submit a record to this court that supports his factual assertions. However, there is no evidence in the record to support Appellant's contention that his personnel file does not comply with the October 2017 order. Appellant did not designate his employment file in the record on appeal or move to supplement the record

---

[5]        ADC's counsel noted at oral argument that Appellant had access to review his employment file on his own, and Appellant's counsel did not dispute such representation.

to reflect the current status of that file. We therefore assume the employment file reflects compliance that is consistent with the Board's order. *See State v. Olague*, 240 Ariz. 475, 478, ¶ 7 (App. 2016) ("It is an appellant's duty to supplement an incomplete record.") (internal citation omitted*); see also State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003) ("An appellant is responsible for making certain that the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal. . . . When a party fails to do so, we assume the missing portions of the record would support the trial court's findings and conclusions.") (internal citations omitted).

**¶26** Throughout the appellate process, Appellant has repeatedly challenged the Board's authority to issue the back-pay award. However, Appellant has never offered to return the funds. Because Appellant received everything he asked for when he initially appealed the termination and is now arguing a position opposite the position that allowed him to obtain the reinstatement and award, we deny him any further relief on appeal.

> *II.* *Costs on Appeal*

**¶27** As the prevailing parties on appeal, ADC and the Board are entitled to an award of costs upon their compliance with ARCAP 21.

## CONCLUSION

**¶28** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA